OPINION OF THE COURT
 

 Jones, J.
 

 The erroneous date rule — that a termination notice which erroneously identifies the termination date is nonetheless sufficient to effect a termination as of the first proper termination date — is applicable notwithstanding that termination triggered certain option rights in the recipient of the notice, at least where there is no proof that the application of the rule would impose any substantial forfeiture or prejudice.
 

 In their 1965 agreement Kent granted Rubinstein a worldwide license to manufacture and sell men’s toiletries under the names and marks "Kent” and "Kent of London”. Royalty provisions called for payment of minimum semiannual installments at the end of June and December in each year until the agreement was terminated. Rubinstein was given the right to terminate the agreement as of December 31, 1971 or at the end of any succeeding calendar year by giving Kent one year’s notice in writing. In the event of such termination the agreement provided that Kent would abstain from all usage of the licensed marks for a period of two years following the date of termination. The agreement went on, however, to give Kent an alternative option to elect to use the marks after termination of the agreement on payment to Rubinstein of a grant-1
 
 *564
 
 back royalty for a period of five years. This option was to be exercised by Kent, if at all, in writing not later than 60 days after receipt of notice of termination from Rubinstein.
 

 Their arrangement did not prove to be the commercial success for which the parties had hoped. Meetings were held but attempts to work out new arrangements were fruitless. Rubinstein accordingly ceased manufacture of Kent products in late 1968 and closed out its inventory in 1969. Rubinstein continued to pay the specified minimum royalties on schedule through the semiannual installment due on December 31, 1971.
 

 On September 16, 1971 Rubinstein sent Kent a letter stating in pertinent part: "As we have previously advised you, the relationship between Rubinstein and Kent will terminate when the contract expires on December 31, 1971 and our next payment of the minimum royalty installment will be the last payment due Kent under our Agreement.” Kent denied that it had received any prior notification of termination as of December 31, 1971 and invited attention to the requirement that one year’s notice of termination be given.
 

 When further communications between the parties extending over several years did not resolve their differences, in March, 1975 Kent brought the present action. Rubinstein moved for partial summary judgment declaring that the agreement between the parties was terminated not later than December 31, 1972. Kent cross-moved for partial summary judgment declaring that the agreement continued in force through December 31, 1973. Supreme Court granted partial summary judgment to Rubinstein, denied partial summary judgment to Kent, and severed the remaining claims for trial. The Appellate Division affirmed and we granted leave to appeal. There should be an affirmance.
 

 The disposition of this appeal turns on whether the erroneous date rule was properly applied by both courts below in the circumstances of this case. The rule had its origin in
 
 Lyon v Pollard
 
 (20 Wall [87 US] 403) and has received continuing if only occasional recognition (e.g.,
 
 Shain v Washington Nat. Ins. Co.,
 
 308 F2d 611;
 
 All States Serv. Sta. v Standard Oil Co. of N. J.,
 
 120 F2d 714, 715). The application of the rule in the present instance would mean, as the courts below have held, that while Rubinstein’s September 16, 1971 letter purporting to give notice of a December 31, 1971 termination, because of
 
 *565
 
 the one-year notice requirement, could not be given effect according to its terms, it was effective to terminate the agreement as of December 31, 1972, the first permissible termination date.
 

 Appellant Kent recognizes the general rule but urges that an exception is to be made when the application of the rule would inflict a forfeiture or work prejudice to the recipient of the notice. It relies principally on
 
 Oldfield v Chevrolet Motor Co.
 
 (198 Iowa 20), a case which does not involve the erroneous date rule but presents only an aspect of the law of damages and in any event was significantly limited in
 
 Harrington v Bremer County Farmers Mut. Fire Ins. Assn.
 
 (203 Iowa 282).
 

 We do not find it necessary or appropriate, however, now to determine whether, as urged by Kent, the erroneous date rule is inapplicable where it is shown that its application would work a forfeiture or other prejudice or that there were other equitable considerations which should preclude its application. The present case was submitted to Supreme Court on cross motions for summary judgment; thus the parties agree that there are no factual issues to be determined and join in application for judicial resolution of their differences on the basis of their submissions made on the motions (cf.
 
 Kuehne & Nagel v Baiden,
 
 36 NY2d 539, 544). In that procedural posture the courts below were presented only with the agreement itself which concededly granted Kent certain option rights for a 60-day period following its receipt of a notice of termination from Rubinstein and the bare statement in the affidavit of Kent’s director-secretary that had Kent known of the effective date of termination it "could have proceeded” to exercise its option rights. There was, however, no doubt as to the date of receipt of the notice of termination, the event which triggered the option. More important there was no proof (or even conclusory assertion) that Kent would in fact ever have exercised its rights under the option or that the application of the erroneous date rule would result in a forfeiture of substantial rights or otherwise prejudice Kent. There was only proof that Kent had option rights. To accept Kent’s argument in this case would be to carve out an exception to the erroneous date rule whenever provision is made for rights contingent on termination or receipt of notice thereof without the necessity of any proof that the rights had substance or that to invoke the general rule would result in forfeiture or other prejudice. No authority is cited for such an extreme position, and no
 
 *566
 
 error was committed by the courts below when they rejected Kent’s arguments.
 

 We have also considered Kent’s further contention that Rubinstein waived its right to claim the benefit of the erroneous date rule and find it to be without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Cooke and Judges Jasen, Gabrielli, Wachtler and Meyer concur; Judge Fuchsberg taking no part.
 

 Order affirmed.